IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BRANDON B.,[1]

        Plaintiff,

v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 3:24-cv-01086-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Brandon B. seeks judicial review of the Social Security Commissioner ("Commissioner")'s final decision denying his applications for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION AND ORDER

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on March 10, 2022, alleging a disability onset date of April 16, 2021. Tr. 15. The Commissioner denied plaintiff's claim initially on July 18, 2022, and again upon reconsideration on October 6, 2022. Tr. 114–32, 135. Plaintiff filed a written request for a hearing on November 14, 2022, and a hearing was held before Administrative Law Judge Derek Johnson on July 11, 2023. Tr. 32–60. The ALJ issued a decision, finding plaintiff not disabled within the meaning of the Act. Tr. 15–25. The Appeals Council denied plaintiff's request for review on May 14, 2024. Tr. 1–6. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") since his alleged onset date of April 16, 2021. Tr. 17. At step two, the ALJ determined plaintiff suffered from the following severe impairments: left tibia and fibula fractures with nonunion. *Id*. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Subpart P, Appendix 1. Tr. 18. The ALJ found plaintiff has the residual functional capacity ("RFC"):

> to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except he can stand and walk for a total of four hours in an eight-hour workday. He requires the flexibility to use a cane to assist with all ambulation; he can stand without using a cane. He can never crawl or climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, stoop, kneel, and crouch. He can tolerate occasional exposure to extreme cold and vibration. He can tolerate no exposure to hazards such as unprotected heights and moving mechanical machinery.

*Id*.

At step four, the ALJ found that plaintiff is unable to perform any past relevant work. Tr. 23. At step five, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers

in the national economy that the claimant can perform, including cashier, router, and small products II assembler. Tr. 24. The ALJ therefore found plaintiff not disabled. Tr. 25.

## DISCUSSION

Plaintiff argues that the ALJ failed to (1) provide clear and convincing reasons supported by substantial evidence to reject his subjective symptom testimony, (2) properly evaluate the medical opinion provided by Dr. Friess, (3) properly evaluate the lay witness statement from plaintiff's spouse, and (4) incorporate relevant limitations into the RFC.

**I.    Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms alleged, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility

finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff's allegations of disability stem largely from a 2021 motorcycle-versus-car accident that led to fractures in his left tibia, fibula, and ankle. Tr. 19. Plaintiff claims that he experiences pain and immobility that prevent him from working. Tr. 304. He also claims that his doctor will not release him to work, that his leg is held together only by hardware, and that he can barely walk. *Id*. Plaintiff testified that he can only stand for about thirty minutes, experiences sharp pain, and that he needs to sit or lie down to relieve the pain. Tr. 45–46. The ALJ acknowledged these symptoms, and found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." Tr. 19. The ALJ provided three distinct rationales for discounting plaintiff's

5 – OPINION AND ORDER

symptom testimony. First, the ALJ noted that the symptoms were inconsistent with the objective medical evidence; next, the ALJ found plaintiff's complaints were a result of his noncompliance with treatment; and finally, the ALJ determined that plaintiff's symptom complaints conflicted with reported substantial gainful activity in the third quarter of 2021. Tr. 19–21.

### A.    Inconsistency with Objective Medical Evidence

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). The lack of supporting objective medical evidence is insufficient, by itself, to justify discounting a claimant's testimony. *See, e.g., Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-CV-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)) ("the Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."). However, "[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record).

Here, the ALJ reasonably concluded that plaintiff's symptom allegations were inconsistent with the objective medical evidence and supported this conclusion with substantial evidence. For example, the ALJ discussed plaintiff's post-operative treatment

notes, many of which demonstrate plaintiff's mildly antalgic gait, full range of motion, and full weightbearing capacities. Tr. 19–21 (citing Tr. 367, 369, 521, 528). The ALJ also observed that while there was evidence showing nonunion of the surgically repaired tibia and fibula fractures, the record shows he did not exhibit chronic deficits of general mobility or left lower extremity strength, sensation, reflexes, or range of motion. Tr. 21 (citing Tr. 569). Lastly, the ALJ pointed out that despite plaintiff's claims of constant debilitating pain, his physicians repeatedly released him with no activity restrictions. Tr. 21.

Plaintiff contends the ALJ harmfully mischaracterized the record, arguing that "instead of engaging in a comprehensive evaluation of the evidence, the ALJ selectively cited isolated instances of improvement, such as occasional reports of reduced swelling" to discredit plaintiff's testimony. Pl. Br. 11. The ALJ's decision did not solely rely on reports of reduced swelling to discredit plaintiff's testimony, nor did it disregard his claims of pain.

The ALJ provided multiple examples in the record, regarding plaintiff's condition both before and after the nail dynamization, to support the conclusion that plaintiff's testimony about his pain and immobility was inconsistent with the medical evidence. For example, the ALJ observed that three weeks after plaintiff's nail dynamization, he ambulated with a cane at a post-operative appointment and reported "5 out of 10" pain, but described that such pain mainly affected his foot and he "does not want to take gabapentin nor be referred to PT for that complaint." Tr. 21 (citing Tr. 569). The ALJ acknowledged plaintiff's "uneven" gait at this appointment, but observed that the chart note described his "excellent knee" and ankle range of motion and that his bones were in anatomic alignment. *Id*. Other than this post-op treatment note, there is no other evidence in the record discussing plaintiff's condition post-nail dynamization. To the extent plaintiff takes issue with the

ALJ's assessment before the nail dynamization, the record substantiates the ALJ's findings further, as many of plaintiff's treatment notes indicate he experienced "minimal pain" and was released with no activity restrictions with full weightbearing. Tr. 19–21 (citing Tr. 367, 370, 376, 578). Accordingly, the ALJ's first rationale for discrediting plaintiff's symptom allegations—that they were inconsistent with the objective medical evidence—meets the clear-and-convincing threshold.

      B.      **Noncompliance with Treatment**

In assessing a claimant's subjective symptom testimony, an ALJ may consider the "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. Here, the ALJ noted that plaintiff's doctors "counseled [him] to quit or lower his nicotine use" and "stressed the importance of smoking cessation due to its effect on the healing process." Tr. 19-20. Yet, plaintiff continued to smoke and his doctor "opined it was 'a likely contributing cause of his non-union.'" Tr. 20; *see also id.* (observing plaintiff "continued to smoke daily"). The ALJ concluded that "numerous encounter notes from the claimant's providers indicate that his ongoing tobacco use is likely playing a role in the delayed healing of the bones in his left lower extremity." Tr. 21. The ALJ's conclusion is supported by the record. *See* Tr. 370 ("He is still smoking which may be impacting his healing potential with the fracture. We recommend he either quit or lower his amount of nicotine use."); Tr. 376 ("Discussed tobacco and cannabis cessation due to the effect on wound healing and effects of smoked nicotine.") Tr. 569 (reflecting plaintiff reported that he quit smoking in May 2023 but he "never stopped smoking completely"); Tr. 544 ("He is an every day marijuana smoker for stress, pain."); Tr. 574 (discussing "ongoing smoking habit").

8 – OPINION AND ORDER

The ALJ also observed that plaintiff expressed disinterest in prescription pain medication and physical therapy. Tr. 21; *see* Tr. 569 (indicating plaintiff "does not want to take gabapentin nor be referred to PT for" pain); Tr. 63 (noting plaintiff "only had one time F/U w/ PT"); Tr. 377 (record of physical therapy appointment in June 2021). However, medical records from May 2022 reflect that plaintiff was later interested in "opioid medications for breakthrough pain" and could not attend PT due to scheduling and insurance issues and was instead doing home exercises. Tr. 372, 367.

### C.  Employment History

When a claimant attempts to work but is forced to stop due to an impairment, this is considered an unsuccessful work attempt and will not show that the claimant is able to do SGA. 20 C.F.R. § 404.1574(a)(1), 416.974(a)(1). An unsuccessful work attempt is a period of six months or less of work that comes after "a significant break in the continuity of . . . work." 20 C.F.R. § 404.1574(c), 416.974(c). "Prior work [is] 'discontinued' for a significant period if [the claimant was] out of work at least 30 consecutive days" or when the claimant was "forced to change to another type of work or another employer" due to their impairment. 20 C.F.R. § 404.1574(c)(2), 416.974(c)(2). The work must end or be reduced to below SGA levels either due to the claimant's impairment or "because of the removal of special conditions that took into account [their] impairment and permitted [them] to work." 20 C.F.R. § 404.1574(c)(3), 416.974(c)(3).

Here, the ALJ found that despite his injuries, plaintiff engaged in work at SGA levels during the third quarter of 2021, "during which time he was working up to 15 hours a day doing work that exceeds the [RFC] in this decision." Tr. 21 (citing Tr. 376 ("Currently [plaintiff] is weight bearing as tolerated on his [l]eft lower extremity; has been walking

unassisted for approx[imately] 3 weeks. No pain in ankle or lower leg with weight bearing; sometimes has soreness at the end of the day. Is on his feet about 15 hours a day (working on cars, running a cannabis farm)."). The ALJ took this into consideration when formulating the RFC. Tr. 21–22.

Plaintiff does not contest that the amount of money made during this time exceeds the amount of countable earnings per month under SGA guidelines.[2] Instead, he argues that this was an unsuccessful work attempt and is a "clear violation" of SSR 84-25. Reply 2. SSR 84-25 states that any work performed under special conditions, or if the claimant was terminated due to medical impairments, cannot be used to negate disability. SSR 84-25, *available at* 1984 WL 49799. There is no evidence to find that plaintiff's 2021 work at Midori Farms was an unsuccessful work attempt. Plaintiff provides no meaningful argument that his work was either done under special conditions or that he was terminated due to medical impairments. Without more, the court is unable to ascertain plaintiff's argument. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) (Courts will not "manufacture arguments for a[] [party], and a bare assertion does not preserve a claim."). Accordingly, the ALJ properly considered plaintiff's ability to do this job after his initial surgery when formulating the RFC. *See* 20 C.F.R. § 1571 ("Even if the work you have done was not [SGA], it may show that you are able to do more work than you actually did.").

## II.    Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27,

---

[2] SGA was, for nonblind claimants in 2021, $1310.00 of countable earnings per month. Program Operations Manual System (POMS) DI 10501.015(B). Plaintiff's wage reports reveal contemporaneous income above SGA. *See* Tr. 269 (earning $5,879 in the third quarter of 2021 working at a cannabis company and showing $5,399 earned in the second quarter of 2021).

10 – OPINION AND ORDER

2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. § 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. § 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. § 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant

11 – OPINION AND ORDER

(length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Saul*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. § 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

### A.     Dr. Darin M. Friess

Dr. Friess began treating plaintiff on April 17, 2021, and completed a Physical Residual Function Capacity Statement on June 27, 2023. Tr. 579. Dr. Friess diagnosed plaintiff with left open tibia and fibula shaft fracture with nonunion. *Id*. Dr. Friess explained that plaintiff's x-rays indicate nonunion, described that plaintiff's pain gets worse with walking, and opined that plaintiff's prognosis is "fair," needing further surgery. *Id*. Dr. Friess indicated that with prolonged sitting, plaintiff's legs do not need to be elevated, he does not need to use a cane or other assistive device, and he would miss four days of work per month due to his physical impairments. Tr. 582–84.

12 – OPINION AND ORDER

The ALJ found Dr. Friess' medical opinion to be unpersuasive. Tr. 23. The ALJ first analyzed Dr. Friess' statement that plaintiff needed to lie down or recline less than an hour per day, stating that the record contains no evidence, including subjective reports to providers, to support this limitation. Tr. 22. Next, the ALJ found Dr. Friess' limitations that plaintiff could sit only one hour and stand and walk less than one hour per eight-hour workday to be "wholly out of proportion to the objective medical evidence, including Dr. Friess' own in-office examinations." Tr. 23. The ALJ concluded that "when viewed against his own treatment notes and the opinions of Drs. Cuccaro and Wiggins, who had [an] opportunity to review medical evidence from multiple sources, I find Dr. Friess' statement to be unpersuasive." *Id*.

Plaintiff argues that the ALJ's reasoning failed to adequately address the supportability and consistency factors and failed to "include a single citation that allows meaningful review" of Dr. Friess' opinion. Pl. Br. 9. The Commissioner counters that the ALJ's decision was amply supported with pinpoint citations to medical and other evidence and that plaintiff's limited take on the record is no basis for remand. Def. Br. 10. Indeed, this is not a situation where the ALJ failed to identify records without a page citation, exhibit number, encounter date, time period, content or otherwise. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (finding generalized references to "treatments notes" insufficient absent any effort to identify the content of the same). The ALJ's path is discernable when the ALJ's decision is considered as a whole.

        **1.    Supportability**

The ALJ first found Dr. Friess' statement that plaintiff would be out of work for at least one year after the date of his injury was unpersuasive because only the Commissioner

has the authority to make such a finding. Tr. 22 (citing Tr. 369). Next, the ALJ found Dr. Friess' opinion that plaintiff cannot walk more than one city block without pain to be in direct conflict with Dr. Morrell's August 2022 encounter notes, which contain plaintiff's self-reports of daily walks and his ability to work for thirty minutes without pain. Tr. 20, 22 (citing Tr. 521). In the objective medical evidence section of his decision, the ALJ cited Dr. Friess' treatment notes releasing plaintiff with no activity restrictions several times, but he also referenced this evidence again in his discussion of the supportability of Dr. Friess' opinion, albeit without pinpoint citations. *See* Tr. 20–22 (citing Tr. 369, 573, 578). While the ALJ did not use pinpoint cites in this particular section of the discussion, the ALJ's path "may reasonably be discerned," as he refers to time frames, encounter dates, and particular content within Dr. Friess' treatment notes—all of which the ALJ had already discussed before. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even when an agency 'explains its decision with "less than ideal clarity,"' we must uphold it 'if the agency's path may reasonably be discerned.'" (quoting *Alaska Dep't of Env't Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

Finally, insofar as plaintiff takes issue with the ALJ's interpretation of Dr. Friess' opinion post-nail dynamization, there are no treatment notes from Dr. Friess to support his opinion on plaintiff's capacity to work post-nail dynamization. As discussed, the record only contains one post-op discussion of plaintiff's condition after his most recent procedure, of which Dr. Friess was not the author of. *See* Tr. 569. Further, it is unclear whether Dr. Friess took plaintiff's recent surgery into account when forming his medical opinion, as there is no discussion of it in his assessment. *See* Tr. 579–84.

14 – OPINION AND ORDER

### 2. Consistency

Next, the ALJ discussed the consistency between Dr. Friess' opinion and the uncontested opinions of Drs. Cuccaro and Wiggins, both of whom had not considered plaintiff's condition post-nail dynamization. Tr. 22. However, the ALJ took this into consideration and added additional postural and environmental limitations than proposed in the doctors' assessments. *Id*. Harmful error is not present where the ALJ's imposition of limitations are stricter than those set out in doctors' RFC assessments. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995).

In sum, to the extent the evidence could be interpreted differently, or there are conflicts or ambiguities in the evidence, those matters are resolved by the ALJ. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999). The Court must uphold the ALJ's conclusion where, as here, the evidence is subject to more than one rational interpretation and the ALJ's decision is supported by substantial evidence. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### III. Lay Witness Testimony

Lay witness testimony falls in the category of "evidence from nonmedical sources," which ALJs consider. *See* 20 C.F.R. § 416.913(a)(4). Under the prior regulations, ALJs could only discount the testimony of lay witnesses by providing specific "reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. The revised regulation for claims filed on or after March 27, 2017, require ALJs to consider lay evidence, but do not require ALJs to articulate how they considered evidence from nonmedical sources using the same criteria as for medical sources. 20 C.F.R. § 416.920c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c)

in this section.").

There is disagreement as to how or whether the revised regulations affect an ALJ's obligation to consider and evaluate lay witness opinions. The Ninth Circuit is reviewing the issue in *Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. March 7, 2025), *vacated and withdrawn*, 2025 WL 1024393, at *1 (9th Cir. Apr. 7, 2025). Judges in this district still require ALJs to state germane reasons for discounting lay witness testimony under the 2017 regulations. *See, e.g., Karen W., v. Commissioner.,* 2025 WL 654113, at *8 (D. Or. Feb. 28, 2025) (citing 82 Fed. Reg. 5844 (Jan. 18, 2017)). Unless and until the Ninth Circuit provides contrary, binding guidance on the interpretation of the 2017 regulations, the Court will continue to require ALJs to state a germane reason for disregarding lay witness testimony. *Valentine v. Commissioner*, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff argues the ALJ failed to develop the record fully, particularly by dismissing corroborative testimony from his spouse. Pl. Br. 14. Plaintiff asserts that his spouse's detailed accounts of his reliance on a cane, need for frequent rest breaks, and inability to perform basic household tasks align with his own testimony and the opinion of Dr. Friess. *Id*. The ALJ expressly stated that he discounted plaintiff's spouse's Third Party Function Report because the allegations contained therein were similar to that of plaintiff. Accordingly, the ALJ did not err in considering and discounting her statements.

## IV. Steps Four and Five

The RFC is the most a person can do, despite the person's physical or mental impairments. 20 C.F.R. § 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id*.;

SSR 96-8p, *available at* 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

Plaintiff argues the ALJ erred by relying on vocational expert testimony at steps four and five that was the product of "selective reliance on less restrictive hypotheticals while ignoring the VE's responses to more accurate scenarios[.]" Pl. Br. 13. Plaintiff argues the ALJ erred by failing to include limitations the ALJ discredited elsewhere—like his need to use a cane to ambulate. *Id.* However, the RFC that the ALJ formulated includes the use of a cane despite Dr. Friess opinion that plaintiff does *not* need to use one. *Compare* Tr. 18 ("He requires the flexibility to use a cane to assist with all ambulation[.]"), *with* Tr. 582 (Dr. Friess answering "No" to the question "[w]hile engaging in occasional standing and walking, must your patient use a cane or other assistive device(s)?").

Plaintiff also argues that the ALJ's omission of his need for frequent, unscheduled breaks and off-task time is a "fatal defect that renders the RFC unsupportable[.]" Reply 3. In formulating plaintiff's RFC, the ALJ reasonably relied on persuasive medical opinions and the overall record to determine the most Plaintiff could do, despite his limitations. Plaintiff's final argument merely rehashes his earlier arguments about symptom testimony and the medical record and therefore fails for the reasons previously articulated. *See Stubbs-Danielson*, 539 F.3d at 1175–76 (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); *Hairston v. Saul*, 827 F. App'x 772, 773 (9th Cir. 2020) (summarily rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments

17 – OPINION AND ORDER

addressed and rejected above."). Because Plaintiff's step four and five arguments add nothing new, the ALJ did not err at these stages of the analysis either.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED July 3, 2025.

                                                                  /s/ Youlee Yim You
                                                             Youlee Yim You
                                                             United States Magistrate Judge